May it please the Court, I am Catherine Maltino, representing the Petitioner, Secretary of Your Honors, the facts of this case are not in dispute. The Petitioner is a native of Afghanistan who moved to Germany in 1979. She received asylum there, and she later became a naturalized German citizen. She and her family then suffered a series of various events and witnessed the repetition of similar types of events among the immigrant community in Germany, both in their specific region and received reports of other incidents that occurred throughout Germany. The immigration judge in reviewing the asylum case made one specific holding in regards to the asylum case. That specific holding was that the Petitioner had not established that the government of Germany was unwilling or unable to control the skinheads or right-wing neo-Nazi groups throughout the country. None of the documentation that was submitted with that application was opposed by the government. The judge relied on portions of that documentation but appeared to overlook certain other documentation that supported the Petitioner's contention that such activity was happening throughout the entire country of Germany. By implication, the immigration judge found that the Petitioner had suffered past persecution through these events. He did not specifically ---- Kennedy. Because of what? Because of gender? Because of ---- As a native of Afghanistan, her skin tone, her hair, her appearance is different than that of the typical ---- So this would apply to all foreigners that are in Germany? It does not apply to all foreigners. However, it does apply to all foreign groups from certain countries, people who appear to be foreign. There were reports of incidents that occurred against Turks, against Afghans, against people from Africa, others who had typically darker skin tones than the normal German population. So any person that appeared to be foreign would be, and the skinheads were after, would be entitled to asylum here? I'm sorry, I did not hear the last part of your comment. Any person that has a skin that would identify them as being foreign would be entitled to asylum here if the neo-Nazis were, as you say, opposed to those? Well, Your Honor, if there were specific events that occurred against those individuals, they have the right under our laws to have that case considered. The immigration judge did consider the facts of this case. And by reaching this second level, he, by implication, said, yes, these events did rise to the level of persecution. Should this Court disagree, we would request that it be remanded so that the judge could make a specific finding on this. The Board of Immigration Appeals accepted the immigration judge's decision when it issued its one-line decision. The documentation established that not just individuals with darker skins, but in one event, I believe it was listed in the Department of State reports, some American citizens of Asian descent were also attacked by these skinheads. In this particular situation, the petitioner and the testimony and the evidence showed that her family had suffered incidents in the past. They suffered two incidents. Her husband was attacked twice in 1990. While these events were disturbing to her, because they were not repeated, she continued with her life. She continued to have faith in the German government and in the German system. She took vacations and returned to Germany. She came to the United States at other times and returned to Germany. It was only when there was a cumulative effect, there were several incidents that occurred to her family, there were several reports, there were several things that occurred, all within approximately six to nine months' period of time, that she and her family felt unsafe. They felt that they had no place to turn in Germany. Were the police responsive to her complaints to the police about it? The police took reports and when her son was beaten, they basically told her, well, you're going to have to look after yourself better. They did not appear to her to be helpful. The evidence was clear that these events occurred throughout Germany. There was no evidence that this was localized persecution and the immigration judge erred in finding that it was a requirement that the petitioner establish that, that there was countrywide persecution. And even if it was a requirement, we believe that the evidence submitted clearly showed that these events occurred throughout Germany. If there are no further questions, I'll reserve any remaining time. We reserve your time. Thank you. Your Honor, on page eight of the immigration judge's opinion, the immigration judge notes that all of the harassment against foreigners commenced or began in Germany after the collapse of the Berlin Wall in 1989 as a result of poorest Germans coming to West Germany and seeing them as a result of societal turmoil, where this Court held in Singh v. INS 134 F. 3rd at page 967, that when violence results as a result of societal turmoil, it is the attorney general is not permitted to grant asylum on that basis. Now, the gist of this case is whether substantial evidence in the record compels the — substantial evidence in the record supports the immigration judge's conclusion that the government of Germany was both able and willing to deal with this problem. Now, if we first take a look at Ms. Mashiri's testimony, every time Ms. Mashiri called the police, the police always responded. Yes, but did they ever find the perpetrators or do anything positive about it? Let's go incident per incident. Well, okay. No, they never found perpetrators in her case. In the case of the robbery, the November 1995 robbery, the police concluded that that was a theft and it followed a couple days after death threat, assassin dog to the car. Which Ms. Mashiri appraised the police with respect to that. So perhaps there's not substantial evidence to support the finding that it was a robbery. There is a base on the following. First, items were stolen from her house. Second, no part of her navel was left or slogans were left indicating that that was a neo-Nazi-related crime. How do you explain the smashing up of everything? We are just determining whether there's substantial evidence of whether the evidence compels a different conclusion here. Well, I'm suggesting that perhaps it does, putting the death threat and the smashing up together. Yes. If, for example, the problem here is, Your Honor, that in the articles, the newspaper articles that Ms. Mashiri proffered to the court, those articles indicated that neo-Nazis always let their built-ins know that they were, that the crime was related to them, as, for example, with the note that was left on the windshield of her car, which was clearly an anti-xenophobic note. But nothing really resulted from that note. If we take a look as to what the evidence compels, because the evidence does not compel the conclusion that the robbery was viewed or was caused by neo-Nazis, then what we have is really one note, an unfulfilled threat. With respect to the incident where her son was beaten by teenagers in school, the police tried to question her son, but he was too distressed to talk. They asked her to file a complaint. And they told her to be careful because of all of these incidents that were occurring. But, in fact, the police in her neighborhood arrested a man who shot over the head of an Afghan boy. So there is really evidence of police in her neighborhood arresting people who had caused this incident. Now, what is the German government doing? Well, according to the newspaper clippings that Ms. Mashiri proffered to the court, those newspaper clippings show that the government is really arresting and convicting neo-Nazis. In fact, the federal government of Germany, according to those newspaper clippings, is asking for recommendations on how to combat those hostilities. Even the Amnesty International report, although it acknowledges that there is ill-treatment by police officers against foreigners, it also says that that persecution is not systematic or methodical. It also says that the government of Germany has prosecuted and convicted many of those police officers. And Ms. Mashiri has admitted that she has never been mistreated by police officers. The State Department report further shows that the government has banned right-wing political parties. It has passed anti-xenophobic laws. It has convicted neo-Nazis just for distributing Nazi paraphernalia, just for inciting hatred. The local governments have prevented Nazi gatherings by training their police officers. So clearly, with this evidence in the record, the record does not compel the conclusion that the government of Germany is unable or unwilling to prevent this violence from happening. Because the government of Germany is doing this on a countrywide basis, there is really no indication that internal relocation is necessary for Ms. Mashiri to be safe in Germany. With respect to if the court finds that the evidence in the record does compel the conclusion that the government of Germany is unable and unwilling to deal... Isn't it either unable or unable, not unable and? Even if this court finds that the government of Germany is unable or unwilling to prevent this violence from happening, the government will ask the court, Pursuant to Ventura v. INS, to remand this case to the Board of Immigration Appeals. How about the countrywide aspect? Is this localized or is it countrywide or what? The incidents are countrywide. There is no indication that the incidents are located to a regional place. Of course, Ms. Mashiri lived 50 miles from the border of East Germany. So it's probably a bigger threat there than in another part of the country. But we're not contesting the fact that it is a countrywide problem. But the fact is that the evidence in the record, there is substantial evidence in the record that Germany is doing something about it. And yes. And that if the court finds that the evidence compels otherwise, then we will ask the court to remand the case. Counsel, I've noticed that the INS is really using Ventura to stand much more broadly for the proposition that you're speaking than I had come to read it. That it applied, that a remand was required if the BIA or the decision that we're reviewing had not actually reached the issue. And now you're saying, well, even though they reached the issue and decided the issue, even if we decide they decided it wrong, Ventura still compels that it be remanded. And I'm not sure that's what Ventura says. Because there is still a discretionary determination of whether to grant asylum or not, even if she's statutorily eligible for asylum. All right. So, yes, that's all your argument. It's just for the purpose of determining whether she is in the agency discretion. You would say we could determine eligibility, but then remand. Yeah, it would be for the court. How is remand after we determine the eligibility? Are you saying anything more than that? I'm just saying that if the court finds that the evidence in the record compels a different conclusion, then it would have to remand because there's nothing else. There's no other issue left. Who then exercises the discretion to grant asylum if the person is eligible? The immigration judge. It has to be the board. Or the VA. No, the immigration judge. The immigration judge. The board reconsiders a further remand to the immigration judge, and the immigration judge makes a discretionary determination. Then the agent or the government may appeal that discretionary determination to the board of immigration appeals. With respect to her claim of voluntary departure, she clearly told the judge four times that she was not willing to leave the country. So I would ask, or the government would ask the court to affirm that determination. If there aren't any other questions. Let me ask one further question. In the regulations, there's a portion which says that if there is a pattern and practice of discrimination against a group, that they're entitled to asylum if they then show that there's some specific incidents involving them. It seems like this is really that kind of a case. Even though the German government, at the higher level at least, wishes to control all of this, they've had local police, which really were adverse to foreigners, and they've obviously been trying to retrain them, but it's only partially successful. And then the skinheads and the neo-Nazis seem to be rising again. So it seems to me like this is one of these pattern and practice cases. The only evidence in the record with respect to a pattern is the Amnesty International report and the State Department report, and both said that there is no pattern of persecution. The other thing is that the government of Germany has been quite successful, according to the State Department report. There has been a decrease of violence since 1992. From the period of 1995-1996, which is the period when Ms. Maschiri left Germany, there was a 50 percent reduction of violence. Of course, where do we draw the line? I think that the government of Germany is, you know, in comparison with most governments, even industrialized nations in terms of how addressing violence against foreigners, it's really stands out. All right. Thank you, counsel. Thank you. We've gone over your time. You have some remaining rebuttal time. Thank you, Your Honors. Just, I would like to clarify two points that my learned colleague made. The Petitioner never claimed that she suffered persecution through the police. She claimed that this was through the skinheads. And given the way that my colleague spoke, it almost appeared as though she was saying that the problem was with the police. Our contention is that the police are unable or unwilling to control these particular groups. Which? Unable or unwilling? Probably a combination of both, Your Honor. According to the State Department reports and Amnesty International, there are police groups that seem unwilling to follow the law. There are police reports that indicate a dislike of foreigners and a sympathy with the right-wing elements. Unwilling, others, I'm quite sure, wish to uphold the law and wish not to repeat the past. What about in this situation, where this community where she lived? In this community, the Petitioner clearly believes that they are unwilling to assist her. I think that she, of course, had not spoken with every single police officer in her local district. I would not be surprised if there were some who were simply unable. I would also like to point out that the Petitioner credibly testified that she believed that the number of reports had dropped because so many members of the foreign communities no longer made reports. They felt that it was a useless task. Thank you, Your Honors. Thank you, counsel. Ms. Sherry v. Ashcroft will be submitted.
judges: B. Fletcher, Hug, Wardlaw